UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ERICK RANGEL-IBARRA,<br><br>Defendant. | Case No. 2:18-cr-00292-JAD-DJA<br><br>**REPORT AND RECOMMENDATION** |

Presently before the Court is Defendant Erick Rangel-Ibarra's Motion to Suppress Evidence of the firearm officers found during the course of a traffic stop as fruit of an unlawful search, filed on June 14, 2019. (ECF No. 20). The Government filed a Response to the Defendant's Motion on June 28, 2019. (ECF No. 22). Rangel-Ibarra filed a Reply on July 10, 2019 (ECF No. 28). The Court conducted an evidentiary hearing on August 15, 2019 (Mins. of Proceedings (ECF No. 34)). At the hearing two Las Vegas Metropolitan Police Officers testified and the court admitted into evidence Defendant's exhibits 1 and 2. At the conclusion of the hearing, the Court indicated it would file a written Report and Recommendation and took the matter under advisement. This Report and Recommendation follows.

**I.   BACKGROUND**

Rangel-Ibarra is charged in a one count Criminal Indictment with Possession of a Firearm by a Prohibited Person in violation of Title 18 U.S.C. §922(g)(5)(B) and 924(a)(2)[1]. The charges are a result of a traffic stop of Rangel-Ibarra conducted on August 25, 2018; after which, a pat down search of Rangel-Ibarra resulted in law enforcement finding a Glock 9-milimeter hand gun.

---

[1] A Superseding Indictment was filed on September 11, 2019 (ECF No. 38) charging Rangel-Ibarra with the same crime. The Superseding Indictment contained one addition which does not affect the determination of this motion.

Rangel-Ibarra now moves for suppression of the firearm officers found during the course of the traffic stop as the fruit of an unlawful search. (ECF No. 20)

## II. TESTIMONY AND EVIDENCE

On August 25, 2018, at approximately 5:00 p.m., Las Vegas Metropolitan Police Department Officers Ashley Barney and Alfred Garcia, while operating in plain clothes capacity in an unmarked unit, witnessed a vehicle driving recklessly, weaving in and out of traffic at a high rate of speed, driving into oncoming traffic to pass before re-entering the appropriate lane and driving on the shoulder of the road. Both officers testified that the vehicle was driving so recklessly that, in their opinion, the driver had a reckless disregard for the safety of others. Both officers testified that they normally would not pull over a vehicle for a traffic violation when they were in an unmarked car, but given the recklessness of the driving violations and their belief that the driver had a total disregard for the safety of others on the road, they decided to chase the vehicle and effectuate a traffic stop. They were ultimately able to catch the car because of other traffic in the area slowing it down. Once behind the vehicle, they activated their lights and the vehicle pulled over.

Both officers testified that they immediately exited their vehicle almost before the vehicle was stopped and as they did so the driver of the vehicle started to get out of his car. Officer Garcia, who was driving the patrol car, approached the driver's side and immediately ordered the driver back into the vehicle. The driver got back in the vehicle and closed the door. Officer Garcia approached the driver's side of the vehicle with his firearm drawn in the ready position. As he approached the vehicle, he could see the driver looking at him from the inside mirror. He also saw the driver reach with the left part of his body either into the side panel of the door or underneath the seat. Officer Garcia testified that as he approached the vehicle, he could see the driver's eyes were wide open and the driver was shaky. The driver did not respond to the officer's questions regarding his driving so Officer Garcia ordered him out of the vehicle.[2]

---

[2] At the time of the stop, officers knew nothing regarding the driver of the vehicle. Both testified their vehicle did not have a computer or dashboard camera, and dispatch had not provided any further information about the vehicle or the driver.

As the driver exited the vehicle, he lifted up his pants which were baggy and loose. Both officers testified that the driver's clothing was extremely baggie with a big long loose t-shirt. Officer Garcia testified that he was "messing around kind of like towards his waistband area." Officer Garcia testified at that stage he turned the driver around to face his vehicle and placed his hands on top of his head. The officer testified that he asked the driver if he had any weapons on him and the driver did not respond. Officer Garcia testified that he then did a pat down search on the driver around the waistband over his shirt and immediately felt the handle of a gun. Upon removing the weapon, the officer determined it was a black semi-automatic Glock pistol. The officer identified Rangel-Ibarra as the driver of the vehicle and the individual who possessed the weapon in question.

Both officers testified that in their experience it is unusual for an individual to immediately exit his vehicle after being stopped for a traffic violation. Officers testified that in their experience when an individual does that it is likely that they will try to flee or otherwise were involved in illegal activity. Both officers also testified that based upon Rangel-Ibarra's extremely reckless driving, and his utter disregard for the safety of others as a result of this driving, together with not knowing anything about the individual driving the car, they had concern for their safety. Additionally, officers testified that the driver made furtive movements reaching for the side panel or perhaps under his seat, and that they could not see the driver's hands which caused them further concern for their safety. Finally, Officer Garcia testified that upon exiting the vehicle, Rangel-Ibarra was reaching toward the waistband area of his loose and baggy clothes where in his experience individuals will carry weapons. Officer Garcia testified that the totality of the circumstances gave him a reasonable suspicion that the officers may be in danger and for that reason he conducted a brief pat down of Rangel-Ibarra at which time he immediately felt the handle of a gun.

**III.    LEGAL STANDARDS AND ANALYSIS**

    **1.    Fourth Amendment**

The Fourth Amendment addresses "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.

The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347, 353 (1967). It protects "people, not places." *Id*. at 351. The Fourth Amendment protection against unreasonable searches and seizures extends to brief investigatory stops of persons or vehicles that fall short of traditional arrests. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). However, the Fourth Amendment is satisfied if the officer's actions are supported by a reasonable suspicion. *Arvizu*, 534 U.S. at 273.

### 2.    Validity of the Initial Traffic Stop and Pat Down Search

A police officer who has reasonable suspicion or probable cause to believe that a violation of traffic laws has occurred may stop the vehicle to investigate the infraction. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996); *see also United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). The government has the burden of proving by a preponderance of the evidence that the officers had lawful grounds to stop Rangel-Ibarra and that the subsequent pat down search of him complied with the Fourth Amendment. *See United States v. Cortez-Rivera*, 454 F.3d 1038, 1041-42 (9th Cir. 2006); *see also United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (*per curiam*); *United States v. Marshall*, 488 F.2d 1169, 1186 (9th Cir. 1973).

"Reasonable suspicion requires far less than actual proof of wrongdoing by a preponderance of the evidence, but it does require that the officer be able to articulate facts which create grounds to suspect that criminal activity may be a foot". *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The "totality of the circumstances" is considered when evaluating "reasonable suspicion". *Sokolow*, 490 U.S. at 7. In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An officer evaluating whether reasonable suspicion is present is entitled to draw on his "own experience and specialized training

to make inferences from and deductions about the cumulative information available." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

In *Terry v. Ohio*, the Supreme Court recognized that effective crime prevention and detection requires that officers be allowed to detain individuals briefly when there is reasonable suspicion to believe a crime has been committed. 392 U.S. 1, 21-24 (1968). In this context, the Fourth Amendment requires only some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances. *Sokolow*, 490 U.S. 7-8 (1989). *Terry* also recognized that law enforcement officers need to protect themselves and the public at large from violence that may ensue in the course of such encounters. 392 U.S. at 23-24. It therefore held that if police officers are justified in believing that the individuals who's suspicious behavior they are investigating at close range are armed and presently dangerous to the officers or to others, they may conduct a limited protective search for concealed weapons. *Terry*, 392 U.S. at 24; *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) (an officer may conduct a limited protective search for concealed weapons if there is reasonable belief the suspect may have a weapon). An officer need not be certain that an individual is armed; the issue is whether a reasonably prudent man could believe, based on "specific and articulable facts," that his safety or that of others is in danger. *Terry*, 392 U.S. at 27; *see also Maryland v. Buie*, 494 U.S. 325, 327, 337 (1990).

Here, officers conducted the traffic stop because of the reckless driving that exhibited a reckless disregard for the safety of others, including driving at a high rate of speed, illegally passing vehicles either in on-coming traffic or on the shoulder and disregarding traffic signals. Thus, officers were clearly justified in conducting the initial traffic stop as it is undisputed that traffic violations were observed and Rangel-Ibarra does not argue the initial stop was unlawful.

Moreover, upon stopping the vehicle, Rangel-Ibarra immediately started stepping out of the vehicle, which caused the officers concern that he was either going to flee or was aware that he had committed a crime. Upon being ordered back into the vehicle, Rangel-Ibarra reached toward the side panel of the door or underneath the seat such that neither officer could see his hands. Then, when ordered out of the vehicle, Rangel-Ibarra reached toward the waistband of his

1 baggy pants and had a loose and baggy shirt, which officers testified in their experience is where
2 someone might hide a weapon. When asked if he had any weapons, Rangel-Ibarra did not
3 respond. Officer Garcia then conducted the pat search and found the weapon.

4 The Ninth Circuit has "identified a wide variety of factors that can support a reasonable
5 belief that an individual is armed." *United States v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006)
6 (collecting cases). Sudden movements, or repeated attempts to reach for an object that is not
7 immediately visible may give rise to a reasonable suspicion a defendant is armed. *Id.*, 456 F.3d at
8 1158. In *United States v. I.E.V.*, the Ninth Circuit held that "mere nervous or fidgety conduct and
9 touching of clothing" is insufficient to establish reasonable suspicion to conduct a pat down. 705
10 F.3d 430, 438 (9th Cir. 2012). To comport with the Fourth Amendment, a police officer must
11 have more than a reasonable belief that if the individual with whom contact is made is armed, he
12 or she would be dangerous. *Flatter* at 1158.

13 The Court finds that there are specific and articulable facts given the totality of the
14 circumstance that gave the officer reasonable suspicion to conduct a pat down search of Rangel-
15 Ibarra. It is undisputed that Officer Garcia patted Rangel-Ibarra down as soon as he was ordered
16 out of the vehicle. He had observed Rangel-Ibarra first step out of the vehicle upon stopping,
17 which made him suspect that Rangel-Ibarra may flee or was involved in illegal activity. Then,
18 the officer observed Rangel-Ibarra engage in furtive movements in the driver's seat where the
19 officer could not see his hands or what he was reaching for, Rangel-Ibarra's eyes were wide open
20 and he was shaky, and then Rangel-Ibarra reached for his waistband upon exiting the vehicle.
21 Viewed in this context of the circumstances known to the officers prior to the pat down, their
22 suspicion that Rangel-Ibarra was armed and dangerous is persuasive and did justify the *Terry*
23 frisk. While nervousness cannot justify a *Terry* frisk on its own, it may be considered amongst
24 other factors described above regarding Rangel-Ibarra's furtive movements and actions outside
25 the vehicle. As a result, the Court finds that the initial traffic stop and pat down search did not
26 violate the Fourth Amendment.

27 / / /
28 / / /

## IV. CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that Defendant Rangel-Ibarra's Motion to Suppress Evidence (ECF No. 20) be DENIED.

## V. NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 19, 2019

_____
DANIEL J. ALBREGTS.
UNITED STATES MAGISTRATE JUDGE