# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Erick Rangel-Ibarra,

    Defendant

Case No.: 2:18-cr-00292-JAD-DJA

**Order Overruling Objections to Report and Recommendation, Adopting Report and Recommendation, and Denying Defendant's Motion to Suppress**

[ECF Nos. 20, 45, 50]

Erick Rangel-Ibarra stands charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(5)(B) and 924(a)(2). He moves to suppress the firearm found during a traffic stop, arguing that Police Officer Alfred Garcia did not have a reasonable suspicion that Rangel-Ibarra was armed and dangerous.[1] After an evidentiary hearing, Magistrate Judge Daniel Albregts recommends that I deny the motion to suppress.[2] In his Report and Recommendation, Judge Albregts found that (1) the initial traffic stop was not unlawful and (2) under the circumstances, the subsequent frisk was supported by reasonable suspicion that Rangel-Ibarra was armed and dangerous.[3] Rangel-Ibarra objects that Judge Albregts (1) failed to reconcile conflicting testimony of police officers Alfred Garcia and Ashley Barney and (2) erred in concluding that reasonable suspicion supported the stop because the officers' observations and inferences amounted to a mere hunch that Rangel-Ibarra was armed and dangerous.[4]

---

[1] ECF No. 20.
[2] ECF No. 45.
[3] *Id.* at 5–6.
[4] ECF No. 50.

Having reviewed the challenged portions of Judge Albregts's Report and Recommendation *de novo*, I find that the officers had reasonable suspicion to believe that Rangel-Ibarra was armed and dangerous and, thus, that the frisk was lawful and the firearm that was recovered as a result of that frisk should not be suppressed. So I adopt Judge Albregts's Report and Recommendation, overrule Rangel-Ibarra's objections, and deny Rangel-Ibarra's motion to suppress.

**Standard of Review**

When a magistrate judge provides findings and recommendations in a criminal case, the district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[5] Local Rule IB 3-2(b) only requires de novo consideration of specific objections. The standard for reviewing unobjected-to sections is left to the district judge's discretion.[6] Because Rangel-Ibarra challenges Judge Albregts's evaluation of the officers' credibility and his finding that the frisk was supported by reasonable suspicion to believe that Rangel-Ibarra was armed, I evaluate de novo only those issues. I adopt all other findings and conclusions without further review.

**Discussion**

Magistrate Judge Albregts conducted an evidentiary hearing on the suppression motion and recounted the events as established by the evidence in his Report and Recommendation.[7] Having reviewed the evidence received at—and the transcript of—that hearing,[8] I find that Judge

---

[5] Fed. R. Crim. P. 59(b)(3).

[6] *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) (emphasis in original) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

[7] ECF No. 45.

[8] ECF Nos. 35, 36.

2

Albregts's summary of the events as established by the evidence is accurate. So I adopt the "Background" portion of his Report and Recommendation in toto, and I do not restate those events here because the parties are familiar with them.

## I. Witness Credibility

Rangel-Ibarra argues that Judge Albregts erred by "adopt[ing] Officer Garcia's version of events" despite alleged contradictions with Police Officer Barney's testimony and Rangel-Ibarra's arrest report, which was prepared by Police Officer Barney.[9] The government responds that certain alleged contradictions are not, in fact, contradictory and that the officers' accounts are credible under the circumstances.[10]

Rangel-Ibarra's objection that Judge Albregts merely adopted Officer Garcia's version of events is belied by his citation to both officers' testimony throughout the Report and Recommendation.[11] Although Judge Albregts cites more often to Officer Garcia's testimony, this reliance on Officer Garcia's account of events is unsurprising because Officer Garcia drove the police vehicle, approached Rangel-Ibarra's vehicle on the driver's side, and ultimately conducted the frisk that revealed the firearm at issue here.[12]

And upon closer consideration, the purported discrepancies can be reconciled. First, Officer Barney testified that Rangel-Ibarra "jumped" out of the vehicle immediately after the stop, while Officer Garcia testified that "half of his body was already out of the car."[13] But Officer Barney immediately added that Rangel-Ibarra reached into the side panel of the driver's

---

[9] ECF No. 50; ECF No. 36 at 26.
[10] ECF No. 51.
[11] ECF No. 45 at 2–3.
[12] ECF No. 36 at 75, 79–81, 83.
[13] *Id.* at 13, 79.

3

door after having "jumped" out of the vehicle,[14] suggesting that Officer Garcia's testimony that Rangel-Ibarra had half his body out of the vehicle is not contradictory. Although the arrest report indicates that Garcia and Barney asked Rangel-Ibarra to exit the vehicle, both officers testified that Garcia did exactly that—but later, after Rangel-Ibarra returned to the driver's seat.[15]

Rangel-Ibarra also points to purportedly conflicting accounts of Rangel-Ibarra's compliance with the officers' instructions to pull over. Officer Garcia testified that Rangel-Ibarra pulled over with "good timing" and "no hesitation."[16] Officer Barney testified that "when the lights were activated . . . [Rangel-Ibarra] did not pull over" and that he "technically did not follow the command because the command can also be the lights and sirens of a vehicle."[17] The arrest report recited only that the officers "conducted a vehicle stop."[18] But defense counsel suggested how these statements can be reconciled in his cross examination of Officer Barney, speculating that Rangel-Ibarra wasn't able to see the officers until they caught up to his vehicle.[19] Indeed, Officer Garcia testified that he had a "hard time" catching up until Rangel-Ibarra ran into heavier traffic.[20] So this discrepancy can also be reconciled.

Rangel-Ibarra next points to Officer Barney's testimony that the officers asked to see Rangel-Ibarra's hands.[21] Rangel-Ibarra is correct that "Officer Garcia did not testify that he

---

[14] *Id.* at 13.
[15] *Id.* at 17–18, 81–82; ECF No. 50-1.
[16] ECF No. 36 at 77–78.
[17] *Id.* at 47–48.
[18] ECF No. 50-1.
[19] ECF No. 36 at 48.
[20] *Id.* at 77.
[21] *Id.* at 53–54.

4

asked to see Mr. Rangel-Ibarra's hands,"[22] but Officer Garcia was not asked whether the officers asked to see Rangel-Ibarra's hands.[23] The arrest report also omitted this question.[24] So this purported contradiction is an omission and does not go to the officers' credibility.

Rangel-Ibarra finally points to Officer Garcia's testimony that he and Officer Barney approached the vehicle with their firearms drawn,[25] while "Officer Barney does not testify officers had their guns drawn."[26] In fact, however, Officer Barney testified that "when we came out of the vehicle . . . we obviously drew our weapons out."[27] Because the purported inconsistencies can be reconciled or simply do not exist, I overrule this objection to the report and recommendation.

## II. Reasonable Suspicion

Rangel-Ibarra does not object to Magistrate Judge Albregts's conclusion that the initial traffic stop was lawful, so I adopt that section of the Report and Recommendation. Judge Albregts found that the subsequent frisk was lawful because: (1) Rangel-Ibarra immediately started stepping out of the vehicle, causing the officers concern; (2) Rangel-Ibarra reached toward the side panel of the door or underneath the seat; (3) Rangel-Ibarra's eyes were wide open and he was shaky; and (4) when Rangel-Ibarra exited the vehicle at Officer Garcia's command, he reached toward the waistband of his baggy pants, which could hide a weapon.[28]

---

[22] ECF No. 50 at 4.
[23] ECF No. 36 at 73–97.
[24] ECF No. 50-1.
[25] ECF No. 36 at 79.
[26] ECF No. 50 at 4.
[27] ECF No. 36 at 13.
[28] ECF No. 45 at 5–6.

Rangel-Ibarra objects that the officers' observations amounted to a "hunch" that he was armed and dangerous.[29] The government does not respond to this objection.[30]

"A lawful frisk does not always flow from a justified stop."[31] Rather, "a *Terry* frisk of a person for weapons requires reasonable suspicion that a suspect 'is armed and presently dangerous to the officer or to others.'"[32] "Each element, the stop and the frisk, must be analyzed separately; the reasonableness of each must be independently determined."[33] "To establish reasonable suspicion [that] a suspect is armed and dangerous, thereby justifying a frisk, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"[34] The Ninth Circuit has recognized that the reasonable-suspicion "inquiry requires consideration of all the facts and circumstances [that] an officer confronts in the encounter . . . consider[ing] the totality of the circumstances"[35] and in light of the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers."[36]

"Reasonable suspicion is an objective standard, asking whether 'a reasonably prudent [person] would have been warranted in believing [that the suspect] was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior.'"[37] "A mere

---

[29] ECF No. 50 at 5–7.
[30] ECF No. 51.
[31] *U.S. v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988).
[32] *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)).
[33] *Id.* (quotation and alterations omitted).
[34] *Id.* (quoting *Terry*, 392 U.S. at 21).
[35] *Id.* (internal citations omitted).
[36] *U.S. v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010).
[37] *Dillard*, 818 F.3d at 876 (quoting *Terry*, 392 U.S. at 28).

6

inchoate and unparticularized suspicion or hunch that a person is armed and dangerous does not establish reasonable suspicion, and circumstances suggesting only that a suspect would be dangerous if armed are insufficient."[38] Rather, there must be adequate reason to believe the suspect is armed.[39] The Ninth Circuit has held that "sudden movements by defendants, or repeated attempts to reach for an object that was not immediately visible, [are] actions that can give rise to a reasonable suspicion that a defendant is armed."[40]

Officer Garcia had more than a mere inchoate and unparticularized suspicion that Rangel-Ibarra was armed and dangerous. Officers Garcia and Barney both testified about specific articulable facts that, when taken together, provide a rational inference that Rangel-Ibarra was armed and presently dangerous. First, Officer Garcia testified that Rangel-Ibarra's unprompted attempt to exit the vehicle caused him concern because, in his experience, a person may try to exit the vehicle if he plans to run or if "there's something to hide."[41] Second, Officer Garcia testified that Rangel-Ibarra reached forward to the side panel or underneath the seat as Garcia approached the vehicle.[42] In both officers' experience, this movement was consistent with reaching for a weapon.[43] Third, both officers testified that Rangel-Ibarra grabbed his waistband when he exited the vehicle, causing concern that Rangel-Ibarra was reaching for something.[44]

---

[38] *Id.* (quotations and internal citation omitted).

[39] *Id.*

[40] *U.S. v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006) (citing *U.S. v. Flippin*, 924 F.2d 163, 164–66 (9th Cir. 1991)).

[41] ECF No. 36 at 80, 95. Rangel-Ibarra argues that this factor does not in itself "logically lead to the conclusion Mr. Rangel-Ibarra was armed," ECF No. 50 at 6, but I consider it under the totality of the circumstances because of the inferences that Officer Garcia drew from it.

[42] ECF No. 36 at 88.

[43] *Id.* at 15, 95.

[44] *Id.* at 18, 82–83.

Rangel-Ibarra argues that Officer Garcia's own testimony highlighted a number of "unknowns" about the stop and is consistent with lawful behavior. For example, he argues that the movement toward the side panel is consistent with reaching for vehicle registration. But both officers testified that, in their experience, this movement was consistent with reaching for a weapon, causing them concern that Rangel-Ibarra was armed and dangerous. And the Ninth Circuit has held that such sudden movements "can give rise to a reasonable suspicion that a defendant is armed."[45] So I agree with Judge Albregts that, under the totality of the circumstances, including the inferences that officers Garcia and Barney drew from those circumstances, reasonable suspicion that Rangel-Ibarra was armed and dangerous supported the frisk. I thus overrule the objections, adopt the Report and Recommendation, and deny the motion to suppress the firearm found during the frisk.

**Conclusion**

IT IS HEREBY ORDERED that Rangel-Ibarra's objections **[ECF No. 50]** to Magistrate Judge Albregts's report and recommendation **[ECF No. 45] are OVERRULED**.

IT IS FURTHER ORDERED that the report and recommendation **[ECF No. 45] is ADOPTED.** Rangel-Ibarra's motion to suppress **[ECF No. 20] is DENIED.**

Dated: November 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[45] *Flatter*, 456 F.3d at 1157.

8